CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

SEP 01 2010

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| In re: PEANUT CORPORATION OF AMERICA, Debtor No. 09-60452 *Debtor,* | CASE NO. 6:10-cv-00027 |
| In re: PLAINVIEW PEANUT CO., LLC, Debtor No. 09-61651 *Debtor,* | ORDER |
| In re: TIDEWATER BLANCHING CO., LLC, Debtor No. 09-61652 *Debtor.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon the several motions filed by *pro se* claimant Kenneth Hinton (hereinafter "Hinton"), which are entitled "Request for Stay and his Opposition to Trustee's Desires to Distribute the Eligible Adult Salmonella Claims from the Settlement Funds in the BI Fund to the Eligible Adult Claimants," filed June 15, 2010 (docket no. 20), "Motion for Determination of Surplus of BI Funds and Monetary Valuation of all Eligible Adult Claims who have not Agreed to the Pro Rata Distribution from the BI Fund Managed by Trustee, Roy V. Creasy," filed June 16, 2010 (docket no. 27), "Motion to Stay," filed June 17, 2010 (docket no. 29), and "Motion to Withdraw Salmonella Claim of Eligible Adult Claimant, Kenneth Hinton," filed July 2, 2010 (docket no. 80). This matter is also before the Court upon the Trustee's "Motion to Approve Claim Amounts and Authorize Pro Rata Distributions from the BI Fund," filed May 26, 2010 (docket no. 3), only insofar as it relates to the valuation of Hinton's claim at $0, and "Trustee's Statement of Legal Fees and Costs Incurred in Connection with the Motions Filed by Kenneth A. Hinton," filed July 6, 2010 (docket no. 82). Finally, this matter is before the Court upon the Report &

Recommendation of United States Magistrate Judge Michael Urbanski, filed July 28, 2010 (docket no. 102).

By Order dated June 2, 2010, the Court referred the Trustee's Motion to Approve Claim Amounts to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition (docket no. 4). The resulting Report & Recommendation was the product of an extensive review of the aforementioned motions, and the fair and full consideration of the testimony and arguments presented at, or in connection with, the June 30, 2010 evidentiary hearing on Hinton's claim. No objections have been lodged against the Report & Recommendation by Hinton, or any other party, after receipt and notice thereof. Accordingly, for these reasons and the reasons set forth therein, the Report & Recommendation is ADOPTED in its entirety.

The Trustee retained Alan Maxwell (hereinafter "Maxwell"), a lawyer with extensive experience in foodborne illness litigation, as Claims Administrator of the BI Fund. *See* Report & Recommendation, at 3. During Maxwell's initial screening of all claims, he identified 123 claims as potentially eligible to receive a disbursement from the BI Fund. Of these, Maxwell concluded that 122 claims warranted a disbursement, and all parties related thereto accepted the value Maxwell had assigned their claims. Maxwell determined that the sole remaining clam, which was that of Kenneth Hinton, was valued at $0 and did not warrant a disbursement from the BI Fund. Hinton was the only claimant who did not accept Maxwell's valuation. *See id.* at 3.

The Report & Recommendation thoroughly reviewed the evidence concerning Hinton's claim which sought to recover $5,000,000 for personal injuries allegedly caused by Peanut Corporation of America. *See id.* at 2 – 13. At the evidentiary hearing held June 30, 2010, the Magistrate Judge heard evidence concerning the difference between *Salmonella Typhimurium*, of which there were 714 culture confirmed cases associated with this outbreak, and *Salmonella Typhi*,

which was never tied to this outbreak. *See id.* at 5. In Hinton's Proof of Claim form (hereinafter "POC form") submitted to Maxwell, Hinton wrote the following: "I purchased several variety [sic] of Gold Emblem brand peanut and cashew nut products from CVS and other vendors during January 2009. I suffered acute symptoms of *Salmonella* gastroenteritis including the onset of nausea, abdominal cramping, and diarrhea <u>in conjunction to being infected with *Salmonella Typhi*</u>." *Id.* at 5 – 6 (quoting Trustee's Ex. 3, at 4) (emphasis added). There is no evidence in the record to suggest that Hinton was exposed to *Salmonella Typhimurium*, the *Salmonella* strain associated with this outbreak. *See id.* at 8. Separately, Hinton's POC form submitted to Maxwell indicated that he became ill on January 22, 2009, which was more than 72 hours after his last consumption of a peanut product on January 18, 2009. "Maxwell explained that this fact alone made [Hinton] ineligible to receive a distribution from the BI Fund, because his illness occurred outside the window of when a person suffering from salmonellosis would begin to show symptoms." *Id.* For these reasons, among others, Maxwell determined that Hinton's claim was valued at $0. *See id.* at 9 – 10.

Hinton requested that the Court reevaluate the proposed settlement distribution, in light of Maxwell's alleged failure to provide him the opportunity to rectify any deficiencies in his claim. *See id.* at 10. The Magistrate Judge, upon a review of the evidence in the record, found that the records Hinton provided clearly showed, on their face, that he was infected with another strain of *Salmonella* not linked to this outbreak. The Magistrate Judge also found that "[t]he timing of Hinton's onset of symptoms is inconsistent with a valid claim." *Id.* at 12. Accordingly, the Magistrate Judge concluded that Hinton's claim plainly failed to satisfy the requirements of the procedure established for *Salmonella* claim settlement and distribution, and recommended to the Court that Hinton's claim be valued at $0. *See id.* at 12 – 13.

Upon my review of the issues presented therein, and considering that no objection to the Report & Recommendation has been made within fourteen (14) days thereof, and that Hinton has subsequently moved to withdraw his claim (docket no. 80), the Report & Recommendation (docket no. 102) will be and hereby is ADOPTED, and accordingly, Hinton's Motion to Stay and Opposition to Trustee's Desires to Distribute Funds (docket no. 20), Motion for Determination of Surplus of BI Funds and Monetary Valuation of All Eligible Adult Claims (docket no. 27), and Motion to Stay (docket no. 29) will be and hereby are DENIED, and the Trustee's Motion to Approve Claim Amounts and Authorize Pro Rata Distributions from the BI Fund will be and hereby is GRANTED IN PART, only insofar as it relates to the valuation of Hinton's claim at $0.

Because the Court has adopted the recommendation of the Magistrate Judge that Hinton's claim was appropriately valued at $0, therefore Hinton's Motion to Withdraw *Salmonella* Claim (docket no. 80) will be DENIED AS MOOT.

Furthermore, the Magistrate Judge has recommended that the Court impose a pre-filing injunction against Hinton. *See* Report & Recommendation, at 14-15. It is clear that there are significant questions raised concerning the authenticity of Hinton's filings, and the veracity of his assertions, in these proceedings. First, included in the medical records provided by Hinton were five pages of medical documentation that were purportedly attributable to Eric Greenberg, M.D., 14314 Notley Road, Silver Spring, Maryland 20904. *Id.* at 7. Attempts to verify the existence of a Dr. Greenberg at this address, or with the license number included in Hinton's medical records, have proved unavailing, and Hinton was unable to provide any explanation as to these abnormalities. *Id.* at 9 & n. 6. Second, there are significant and material inconsistencies between the documentation Hinton provided to Maxwell, and that provided to the Court. For example, in the documentation initially provided to Maxwell, Hinton's POC form stated that he suffered symptoms "in conjunction

to being infected with *Salmonella Typhi*." *Id.* at 6 n. 2 (quoting Trustee's Ex. 3, at 4). It also stated that he first became ill on January 22, 2009, which was more than 72 hours after he last consumed peanut products. Maxwell valued Hinton's claim at $0 explicitly upon these, and other, bases. *See e.g.*, Trustee's Motion to Approve Claim Amounts and Authorize Pro Rata Distributions from the BI Fund, at 6 (docket no. 3). However, the POC form that Hinton filed with the Court omits the clause "in conjunction to being infected with *Salmonella Typhi*," and it also represents that he became ill on January 18, 2009, the same day he last consumed a peanut product. *See* Report & Recommendation, at 6 n. 2, 3. These documents otherwise appear to be identical. The Court is unaware of any explanation for why the forms that Hinton submitted to the Court should differ in these material respects from those initially submitted to Maxwell. <u>Third</u>, during the June 30, 2010 evidentiary hearing, when it became "manifestly clear that Hinton's claim had no merit," the Magistrate Judge called a two-minute recess, and stated that he wanted to speak to the parties. *See* Report & Recommendation, at 13. Upon returning to the bench, Court security officers advised the Magistrate Judge that Hinton had left the building, and he did not reappear. This evidentiary hearing was held upon Hinton's motions, in order to provide him with a fair and full opportunity to challenge Maxwell's valuation of his claim. <u>Fourth</u>, Hinton has a well-documented and lengthy history of filing frivolous lawsuits. *See e.g.*, *Hinton v. Equifax Info. Servs.*, No. 1:09-cv-1061, 2010 WL 2405652, at *1 (E.D. Va. Apr. 26, 2010) (noting that a previous court recognized that "plaintiff had filed, in federal court alone, approximately forty-three lawsuits"). In at least five federal district courts, Hinton "has been barred from filing any further lawsuits or warned of the possibility of sanctions in the event of further filings." *Id.* at 1 – 2 (citing cases from the District of Maryland, the Middle District of Pennsylvania, and the Western District of Texas, before imposing a pre-filing injunction against Hinton in the Eastern District of Virginia). In light of the above, the Magistrate

Judge recommended that a pre-filing injunction be imposed as to Hinton, recommended that the Clerk not accept any filing from Hinton without verifying he had the written permission of a judicial officer, and further sent a copy of the Report & Recommendation to the United States Attorney for the Western District of Virginia for any investigation and action he deems appropriate. *See* Report & Recommendation, at 14 – 15. The Magistrate Judge did not recommend that the Court impose monetary sanctions nor does the Court find monetary sanctions to be available under these circumstances. *See* Fed. R. Civ. P. 11(c)(5)(B) (stating that a court must not impose a monetary sanction unless it issued a show-cause order under Fed. R. Civ. P. 11(c)(3)). Accordingly, The Trustee's Motion for Attorney's Fees (docket no. 82) is DENIED.

However, it is appropriate for the Court to issue <u>non-monetary</u> sanctions "when such a sanction is necessary to deter future litigation abuse." *Abbott v. SunTrust Mortg., Inc.*, Civil Action No. 3:08-cv-665, 2009 WL 971267, at *6 (E.D. Va. Apr. 8, 2009) (citing *Mazur v. Woodson*, 191 F.Supp.2d 676, 684 (E.D. Va. 2002)). The Court should consider the following factors before issuing a pre-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*United States v. Hollar*, 885 F.Supp. 822, 825 (M.D.N.C. 1995) (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

By applying the aforementioned factors, a pre-filing injunction against Hinton is clearly appropriate. The *Equifax* case in the Eastern District of Virginia catalogued, at that point in time, Hinton's history of litigiousness. He had already filed forty-three lawsuits in federal court alone, and

the *Equifax* court recognized the "abusive and frivolous" nature of some of his previous claims. *See Equifax*, 2010 WL 2405652, at *1 – *2 (citing, *e.g.*, *Hinton v. McDonald's Corp.*, No. AW-01-cv-1400 (D. Md. June 27, 2002) (dismissing, among other things, constitutional claims against McDonald's for the sale of French fries not cooked in 100% vegetable oil)). The Court has already addressed several troubling aspects of Hinton's filings related to this case, which were further documented in the Report & Recommendation. The Trustee has incurred significant expense, in the amount of $24,449.09, in order to respond to the motions filed by Hinton. *See* Trustee's Statement of Legal Fees and Costs Incurred in Connection with the Motions Filed by Kenneth Hinton, at 2 (docket no. 82). Other sanctions would not be adequate to protect this Court, and other parties, as several other courts have previously barred Hinton from filing further lawsuits, or warned him about the possibility of sanctions in the event of further filings. *See id.* at *1. Indeed, Hinton has pursued and appears to be pursuing claims against Kanan, Inc., and Kellogg in the Arlington County General District Court. *See* Report & Recommendation, at 11 n. 7.

Accordingly, Hinton is ENJOINED from filing any action in the Western District of Virginia without first obtaining leave of Court, which will not be granted unless the action is (1) not frivolous; (2) filed in good faith; and (3) a new claim that has not been disposed of by any court in any previous action.

Furthermore, it is ORDERED that the Clerk of Court not accept any filing from Hinton without first verifying that he has the written permission of a judicial officer to file it.

Finally, considering the circumstances of Hinton's claim, it is ORDERED that the Clerk of Court transmit a copy of this Order, and the Report & Recommendation, to the United States Attorney's Office for the Western District of Virginia, for investigation and any other action deemed to be appropriate.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record, to *pro se* claimant Kenneth Hinton, and to the United States Attorney's Office.

Entered this 1st day of September, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE